Freeman, J.,
delivered the opinion of the court:
The questions involved in this case grow out of the proper construction of the will of John C. House, deceased, late of Rutherford county, and substantially the following-state of facts in connection with the. estate of said House. He died in the spring of 1855, leaving a will which was duly proven, and part of the executors therein appointed entered 'upon the duties of their office, one of them, perhaps, declining to do so. He left Mrs. Russell, the complainant, his widow, who, in 1865, intermarried with her co-complainant, Russell. He also left surviving him three children, all daughters, one of whom died about* two years before this bill was filed in 1872. The executor who had acted resigned his office, and defendant, Finney, has been appointed administrator de bonis non, with the will an-nexedi
In December, 1854, before his death in April, 1855, House had purchased a tract of land containing upwards of four hundred acres of land, for which he gave his notes, the land having been purchased from Wm. Major.
These notes were due, respectively, January 1st, 1856, 1857, 1858, .and 1859, and aggregated over $12,000. A bond for title was given by Major, when the purchase money should be paid. This was all the land owned by the testator at his death. He had, however, farm stock, utensils, etc., together with a number of slaves. He left assets in the form of debts due him over and above his own liabilities, except the land debt, about the sum of $5,400. This amount was collected by the executors and *256 appropriated to tbe payment of tbe land debt. Tbe widow continued to carry on tbe farm, and it seems very profitably, as sbe furnished tbe means from its proceeds, after supporting herself and children, to pay off tbe balance of the debt against tbe land, except, probably, tbe sum of five hundred dollars, which was received by her from her father’s estate, and thus appropriated These payments seem to have been completed before October, 1865, probably by 1862, and amounted to about $7,000.
However, at a former date, a deed was made by Major, in pursuance of bis bond, by which be conveyed tbe land jointly to Mrs. Russell, tbe widow, and her three children by former husband [John 0. House, deceased, and], they, by the terms [thereof] became tenants in common of the same, and tlius the title stands at present.
She now claims by this bill that she had the right to the profits arising from the use of the land, after supporting herself and children, and that this sum of about $7,000, paid, in the language of the bill to disincumber the land, creates a trust and equity in this land to the extent of the payments, made. She prays an account to ascertain the amount so paid, and that an interest be declared in said land in her favor to the extent of the money so paid, with interest on said payment, and to reimburse her, said land be sold, or such other decree as will effectuate her claim iu the premises.
The clauses of the former husband’s will, under which this claim is sought to be set up, are substantially as follows:
“First. It is my will that all my just debts be paid out of my effects by my executors.
“Second. It is my will and desire that my beloved wife, Martha L. [the present complainant], ha-ve all of my real estate that I have or may have, during her natural life, or widowhood, for the use of her and my children, and that my said wife, Martha L., is not to charge board for *257 raising them during the time my property remains together for the benefit of her and my children.
“Third. It is my wish that my wife shall have the use of all my household and kitchen furniture, and all my farming tools, and stock of every description; all of my negroes that I have, or may have; also my crops of every description, and my stock in the Nashville & Chattanooga Railroad Company, .for the use and benefit of her and my children during her natural life or widowhood.”
He then adds in fourth clause, that she shall keep all his property together so long as she makes a support, without wasting the estate, and in case she cannot make a support, or is wasting or squandering the estate, certain friends designated were requested to- make a division of property on hand equally between his wife and children, except that his daughter, Mary Alice, was to have Ms stock in the railroad over and above the shares of others.
He further provided, if she should get married, his executors were authorized to divide his estate as above specified.
Some other provisions follow, but as the only matter before us is the right of complainants to this bill — that is, the wife and her second husband, to the relief claimed, and not a general construction of the will, they need-not be quoted.
In the view we take of this case it is not absolutely necessary that we determine precisely the question as to the exact amount or quality of the estate of the wife under the clauses of the will cited. We need but say that the intention of the testator, gathered from the whole scope and the tenor of the will, to be construed in the light of the surrounding facts, is the paramount rule in the construction of a testamentary paper, and we may add that, except in cases where technical language is used, having, as a matter of law or public policy [acquired a fixed and peculiar meaning distinct from the popular sense], the language used by one man in his will, and the construction *258 given it by courts, can furnish but little aid in arriving at what is meant by another, disposing of his property under different surroundings.
Passing from this, however, we assume it is clear that the widow took this landed estate, with the use of the farming implements, stocks, slaves, etc., subject not only by the terms of the will to the payment of the debts of her husband, but also' charged in favor of creditors by the law of the land. The land debt was an express lien on the land purchased, and unless paid off, the land which was to be the main basis of all profits, by its culture and the use of tire labor of the slaves on it, would be sold, and she thus deprived of it entirely.
She no doubt so understood it, and in view of these facts, she voluntarily came forward as owner, to whatever extent it might be, and advanced the proceeds and profits of the estate to disincumber it of its burdens, and relieve it of that which was a specific charge upon it in her hands, whether as trustee for her chidren, or as owner for life or widowhood in her own right She now seeks, in fact, for that is the effect of the claim of herself and second husband, to be substituted to the rights of the vendor, and have the benefit of these debts, fixed as a charge on these lands, and to this extent claim the money so paid to be a lien on the land as against her children.
We had substantially this .question in principle before us at last term at Jackson, in the case of James Wicker-sham’s estate [Belcher v. Wickersham, reported in 9 Bax., 111], where the heirs came forward, and out of the rents and profits of the estate, and from other moneys advanced by them, paid off a large amount of the debts of the estate, assuming or supposing the estate would be solvent, and leave them a largo inheritance. It turned out unfortunately that by reason of, shrinkage in values caused by changed state of the times, that the estate ultimately proved insolvent. They then sought, as against other cred- *259 i tors, to be preferred against them, and have a claim allowed as a charge on the real estate to the extent of the moneys advanced by them. We held this could not be done on the principle that it was a payment by parties claiming an interest in the property for the purpose of relieving their own estate, voluntarily made, and with no view or purpose, at the time, of fixing or keeping up a charge on the estate, but, on the contrary, to relieve it from such a charge, and that such a charge could not afterwards be raised, contrary to the purpose at the time of the payment, because of subsequent changes in the state of the property arising out of change of times and shrinkage in value.
We cannot, in principle, distinguish that case from this,. Here the widow advanced the profits of the estate to dis-incumber it, and did so. She had no purpose or thought at the time of keeping alive the incumbrance on the property for her benefit, or holding it as debt against the lands of herself and children. The payments were probably completed ten years before this bill was filed. She probably would never have thought of this claim had not the keener sight of a second husband aided her perception of her rights in the matter.
Under these circumstances, we cannot see any solid basis for her assumed equity, either in law or morals. The probability is, if this charge, as claimed in her bill, with interest on the payments as asked, were allowed, it -would absorb the entire land, and thus deprive the testator’s children of their patrimony for the benefit of the widow. "We think this cannot and ought not be done.
We therefore hold, on the facts of the case, that the incumbrances thus paid off were paid voluntarily by her, having the intent to discharge them, with no purpose or view of keeping up or fixing a charge on this land at the time; that the contrary purpose very clearly appears from the facts; and it is too late now, after, perhaps, ten years, to resuscitate, or bring into existence, a claim having no *260 basis for its support in the facts of the transaction at the time' the payments were made. In this view, we do not think complainants have any equity whatever to charge this land, by reason of any payments made, as shown in the record, and direct that the decree of the chancellor be reversed, and bill dismissed with costs.